1
2
3
4

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

YVETTE CORTES-PACHECO, et al.,

　　　Plaintiffs,

　　　　v.

PBF-TEP ACQUISITIONS, INC., et al.,

　　　Defendants.

Civil No. 3:15-CV-01460 (JAF)

5
6

**REMAND ORDER**

7　　　　On or about March 12, 2015, plaintiffs Yvette Cortés-Pacheco ("Cortés"), her

8　　husband Eric Ramos-Martínez, their conjugal partnership, and their child Kristian Javier

9　　Meléndez-Cortés, commenced this civil action by filing a complaint in the Court of First

10　　Instance, Fajardo Superior Court, alleging multiple claims under Puerto Rico law against

11　　defendants PBF-TEP Acquisitions Inc., PDR Acquisitions LLC, Marina PDR Tallyman

12　　LLC, Marina PDR Equipment LLC, Marina PDR Operations LLC, and executive officers

13　　Nicholas Prouty and Jeremy Griffiths (including their spouses and conjugal partnerships, if

14　　any).　(ECF No. 15-1.)　Plaintiffs' local-law claims stem from defendants' allegedly

15　　wrongful firing of Cortés from her job at Marina Puerto del Rey in Fajardo, Puerto Rico,

16　　which defendants allegedly own and operate.　(ECF No. 15-1 ¶¶ 13-27.)　On March 25, 2015,

17　　plaintiffs served process on defendants at a single business address in San Juan, Puerto Rico,

18　　where each corporate defendant has its administrative office and where Richard Dowling,

19　　who accepted service on behalf of the "PDR" defendants, appears to serve as assistant

20　　manager of each of those four corporations.　(ECF No. 15-1 at 1-2, 16-17, 31-32, 46-47.)

1  Co-defendant Griffiths was also in the office, and he accepted service on behalf of himself

2  and PBF-TEP Acquisitions.  (ECF No. 15-1 at 61-62, 76-77.)

3        On April 24, 2015, defendants removed the action to this court on the grounds that

4  every non-diverse defendant had been "fraudulently joined" and thus should be dismissed

5  and that an alleged federal defense to plaintiffs' local-law claims triggered our arising-under

6  jurisdiction.  (ECF Nos. 1, 5.)  Plaintiffs did not contest the removal.  Defendants moved the

7  court to dismiss most of the complaint under Federal Rule of Civil Procedure 12(b)(6).  (ECF

8  No. 10.)  Plaintiffs opposed the motion.  (ECF No. 33.)  With prior leave of the court,

9  defendants replied to the opposition.  (ECF No. 36.)  The court cannot rule on the merits of

10  the motion, however, because we lack subject-matter jurisdiction.

11        "Although neither side has voiced any concern about [it], 'a court is duty-bound to

12  notice, and act upon, defects in its subject matter jurisdiction sua sponte.'"  *In re Plaza-*

13  *Martínez*, 747 F.3d 10, 12 (1st Cir. 2014) (quoting *Spooner* v. *EEN, Inc.*, 644 F.3d 62, 67

14  (1st Cir. 2011)).  "When a civil action is originally filed in state court, removal to federal

15  court is proper only if the action could have initially been brought in federal court."  *Ortiz-*

16  *Bonilla* v. *Federacion de Ajedrez de P.R., Inc.*, 734 F.3d 28, 34 (1st Cir. 2013) (citing 28

17  U.S.C. § 1441(a).  "Where it applies, diversity jurisdiction requires 'complete diversity of

18  citizenship as between all plaintiffs and all defendants,'" meaning "diversity jurisdiction does

19  not exist where any plaintiff is a citizen of the same state as any defendant."  *Alvarez-Torres*

20  v. *Ryder Mem'l Hosp.*, 582 F.3d 47, 53-54 (1st Cir. 2009) (quoting *ConnectU LLC* v.

21  *Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008)); *see also* 28 U.S.C. § 1332(a).

22        "[A] corporation is a citizen of both the state where it is incorporated and the state

23  where it has its principal place of business, while a person is a citizen of the state where he is

1  domiciled." *HSBC Realty Credit Corp.* v. *O'Neill*, 745 F.3d 564, 566 n.1 (1st Cir. 2014)

2  (citing 28 U.S.C. § 1332(c)(1); then citing *Rodríguez* v. *Señor Frog's de la Isla, Inc.*, 642

3  F.3d 28, 32 (1st Cir. 2011)). "[T]he citizenship of a limited liability company 'is determined

4  by the citizenship of all of its members.'" *D.B. Zwirn Special Opportunities Fund, L.P.* v.

5  *Mehrotra*, 661 F.3d 124, 125 (1st Cir. 2011) (per curiam) (quoting *Pramco, LLC ex rel.*

6  *CFSC Consortium, LLC* v. *San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006)).

7  "Puerto Rico is a state for diversity-jurisdiction purposes." *Señor Frog's*, 642 F.3d at 32

8  (citing 28 U.S.C. § 1332(e)).

9      "[W]here there is no diversity of citizenship between parties, removal jurisdiction

10  turns on whether the case falls within 'federal question' jurisdiction," which applies only

11  when the case presents a claim or right "'arising under the Constitution, laws, or treaties of

12  the United States.'" *Ortiz-Bonilla*, 734 F.3d at 34 (quoting 28 U.S.C. § 1331). "The 'arising

13  under' analysis is informed by the well-pleaded complaint rule, which 'requires the federal

14  question to be stated on the face of the plaintiff's well-pleaded complaint.'" *López-Muñoz* v.

15  *Triple-S Salud, Inc.*, 754 F.3d 1, 4 (1st Cir. 2014) (quoting *R.I. Fishermen's All., Inc.* v. *R.I.*

16  *Dep't of Envtl. Mgmt.*, 585 F.3d 42, 48 (1st Cir. 2009)). "If a claim does not allege a federal

17  cause of action, 'we must inquire into whether some element of the [plaintiff's] claim

18  depends on the resolution of a substantial, disputed question of federal law.'" *Ortiz-Bonilla*,

19  734 F.3d at 34 (quoting *Templeton Bd. of Sewer Comm'rs* v. *Am. Tissue Mills of Mass., Inc.*,

20  352 F.3d 33, 36 (1st Cir. 2003)). "The existence of a federal defense is not sufficient for

21  removal jurisdiction." *Rossello-Gonzalez* v. *Calderon-Serra*, 398 F.3d 1, 10 (1st Cir. 2004)

22  (citing *Franchise Tax Bd.* v. *Constr. Laborers Vacation Trust*, 463 U.S. 1, 10-11 (1983)).

23  "That is generally true even where the asserted defense is the preemptive effect of a federal

1    statute." *Ten Taxpayer Citizens Group* v. *Cape Wind Assocs.*, 373 F.3d 183, 191 (1st Cir.

2    2004) (citing *Franchise Tax Bd.*, 463 U.S. at 12).

3            "[T]he removing party bears the burden of persuasion vis-à-vis the existence of

4    federal jurisdiction." *López-Muñoz*, 754 F.3d at 9 (quoting *BIW Deceived* v. *Local S6*, *Indus.*

5    *Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824, 831 (1st Cir. 1997)).    In

6    particular, the party's notice of removal "must show that the . . . jurisdictional prerequisites

7    for federal jurisdiction are met." *Romulus* v. *CVS Pharm., Inc.*, 770 F.3d 67, 80 (1st Cir.

8    2014).  If "the removing party lacked an objectively reasonable basis for seeking removal,"

9    the court may require the party to pay just costs and any actual expenses, including attorney

10   fees, incurred as a result of the removal.  *Martin* v. *Franklin Capital Corp.*, 546 U.S. 132,

11   141 (2005) (construing 28 U.S.C. § 1447(c)).

12           In the complaint, plaintiffs claim that defendants violated Puerto Rico law when co-

13   defendant Griffiths, "one of the chief executives of the defendants," wrongfully fired Cortés,

14   in April 2014, from her longtime job as manager of the Dry Stack, Boat Yard, Land Storage,

15   and Fuel Dock Departments at Marina Puerto del Rey in Fajardo, Puerto Rico, replacing her

16   with a younger man whom she had just trained to be her assistant.  (ECF No. 15-1 ¶¶ 8, 20,

17   23-27, 33, 44, 53.)  Plaintiffs allege that Cortés started to work for defendants in late May

18   2013, when defendants jointly acquired her former employer, Marina Puerto del Rey, Inc., as

19   part of the latter's reorganization under Chapter 11 of the United States Bankruptcy Code.

20   (ECF No. 15-1 ¶¶ 13-14, 22.)  Plaintiffs contend that defendants had Cortés sign a new

21   employment contract, dated May 31, 2013, following which "Rolando Rodríguez, the

22   defendants' General Manager," informed Cortés that "she would be appointed as a regular

23   employee of the defendants."  (ECF No. 15-1 ¶¶ 14, 17.)  Plaintiffs maintain that Cortés was

1  "an employee of [all] the defendants," and not of any particular one of them.  (*See*, *e.g.*, ECF

2  No. 15-1 ¶ 22.)  Plaintiffs reside in, and thus are citizens of, Puerto Rico.  (ECF No. 15-1 ¶¶

3  1-3.)  The complaint does not allege defendants' citizenship.  (*See* ECF No. 15-1.)

4        In removing the action to this court, defendants admit that the complaint properly

5  states a claim against co-defendant Marina PDR Equipment under 29 L.P.R.A. § 185a, which

6  provides a cause of action to "[e]very employee . . . who is discharged from his/her

7  employment without just cause."  (ECF Nos. 10 at 15; 36 ¶ 31.)  But that is all defendants

8  concede.  They argue that the complaint fails to state a claim against every other defendant

9  because liability under Puerto Rico law is limited to Cortés' employers, and Cortés' May 31,

10  2013, employment contract was only with Marina PDR Equipment, which, defendants assert,

11  means that Marina PDR Equipment was Cortés' sole employer upon her firing in April 2014.

12  (ECF Nos. 1 at 3-4; 10 at 3, 3 n.1, 4, 11-12.)  Moreover, defendants argue that they cannot be

13  held liable for any wrongdoing in the firing of Cortés from the marina because, one year

14  earlier, they had purchased the marina "free and clear" of "successor and transfer liability."

15  (ECF No. 1 at 6.)

16        Defendants' argument in favor of our diversity jurisdiction is woefully inadequate.

17  They allege that Marina PDR Equipment was "a Delaware limited liability company," but

18  they fail to identify the company's members or their citizenship.  (ECF No. 10 at 3 n.1.)

19  Defendants then allege that, "[i]n October 2014, Marina [PDR] Equipment merged into

20  Marina PDR [Operations] (also a Delaware limited liability company) and ceased to exist."[1]

---

[1] These allegations appear in the motion to dismiss, but not the notice of removal.  In the notice, defendants claimed that Marina PDR Tallyman had been Cortés' sole employer.  (ECF No. 1 at 2-4.) Later, in the motion, defendants state that the earlier claim was "mistaken" and then offer the allegations

1   (ECF No. 10 at 3 n.1.)   But, they remain mum about the successor's members and their

2   citizenship.   No other allegations are made in support of party diversity.   These limited

3   allegations are "insufficient to establish that the parties [a]re diverse for purposes of diversity

4   jurisdiction because the citizenship of a limited liability company 'is determined by the

5   citizenship of all of its members.'"   *D.B. Zwirn*, 661 F.3d at 125 (quoting *Pramco*, 435 F.3d

6   at 54).   Without knowing the identity and citizenship of these members, the court cannot hold

7   that defendants, as "[t]he party seeking removal," have successfully borne "the burden of

8   showing that federal jurisdiction lies."   *See Coll. of Dental Surgeons of P.R.* v. *Conn. Gen.*

9   *Life Ins. Co.*, 585 F.3d 33, 39 (1st Cir. 2009).

10         Even if this court were to assume that defendants could amend their allegations to

11   establish that Marina PDR Equipment and/or Marina PDR Operations are diverse, their

12   attempt to invoke our diversity jurisdiction would still fail.   After all, without identifying

13   who they are,[2] defendants indicate that some co-defendants are, like plaintiffs, "citizens of

14   Puerto Rico."   (ECF Nos. 1 at 2-3.)   Normally, this absence of "complete diversity of

15   citizenship" would preclude our exercise of diversity jurisdiction.   *Alvarez-Torres*, 582 F.3d

16   at 53 (quoting *ConnectU*, 522 F.3d at 91).   Defendants attempt to work around this problem

17   by claiming that these co-defendants "should be ignored under the fraudulent joinder

18   doctrine" because only Cortés' employer can be held liable under Puerto Rico law for her

19   firing, and "Cortés' employment contract shows [that] her employer was Marina [PDR]

_____

in the main text.   (*See* ECF No. 10 at 3 n.1.)   The court hereby accepts those allegations in the motion to dismiss as an amendment, under 28 U.S.C. § 1653, of the defective jurisdictional allegations in the notice.

        [2]   The court finds it disingenuous and unacceptable that defendants, represented by professional counsel, would remove a case to federal court based on our alleged diversity jurisdiction, but then neglect to inform us of the citizenship of each defendant.   (*See* ECF No. 1.)   Defendants' conduct is especially dubious in light of their indication that certain co-defendants are non-diverse.   (*See* ECF No. 1 at 3.)

1    Equipment."  (ECF Nos. 1 at 3; 10 at 3 n.1, 12-15.)  "[U]nder the doctrine of fraudulent

2    joinder, removal is not defeated by the joinder of a non-diverse defendant where there is no

3    reasonable possibility that the state's highest court would find that the complaint states a

4    cause of action upon which relief may be granted against the non-diverse defendant."

5    *Universal Truck & Equip. Co.* v. *Southworth-Milton, Inc.*, 765 F.3d 103, 108 (1st Cir. 2014).

6    To invoke diversity jurisdiction by this means, the fraudulent joinder must be "apparent from

7    the face of the original complaint."  *Id.* at 108.

8             Nothing on the face of the complaint demonstrates that virtually all the defendants

9    have been fraudulently joined to the action.  Plaintiffs sufficiently allege that Cortés was "an

10   employee of the defendants," who was wrongfully fired by co-defendant Griffiths, one of

11   their "chief executives," under circumstances that show that defendants may not have had a

12   reason to fire her other than a discriminatory desire to replace Cortés, an older woman, with

13   her newly-trained assistant, a younger man.  (*See* ECF No. 15-1 ¶¶ 20-28.)  Instead of

14   attacking the facial sufficiency of those allegations, defendants maintain that Cortés' May 31,

15   2013, employment contract "contradicts" the complaint and thus "trumps" its allegations.

16   *See Young* v. *Wells Fargo Bank, N.A.*, 717 F.3d 224, 229 n.1 (1st Cir. 2013).  Plaintiffs did

17   not attach a copy of the contract to the complaint, but defendants have attached one to the

18   motion to dismiss, and they invite us to consider it.  (ECF No. 10 at 11 n.6.)  In their

19   opposition to the motion, plaintiffs do not contest the authenticity of that copy.  (*See* ECF

20   No. 33.)  Thus, the court will assume its authenticity and accept defendants' invitation to

21   consider it.  *See Young*, 717 F.3d at 229 n.1.  Unfortunately for defendants, the contract does

22   not prove what they claim it does.  (*See* ECF No. 16-1.)

1    Cortés' employment contract with Marina PDR Equipment does not rule out the

2    possibility that she was employed by the other defendants at the time of her firing.  (*See* ECF

3    Nos. 1 at 3-4; 10 at 3 n.1, 11-13.)  The contract does not have an exclusivity clause limiting

4    Cortés to a single employer.  (*See* ECF No. 16-1.)  *See García* v. *World Wide Entm't Co.*,

5    132 D.P.R. 378 (1992) (enforcing an exclusivity clause under Puerto Rico contract law).

6    Instead, the contract acknowledges that Cortés may work for multiple companies

7    simultaneously when it has her affirm that she has "not executed any non-compete agreement

8    with any employer that [she] may be working for or rendering services to at present."  (ECF

9    No. 16-1 ¶ 13.)  Moreover, even if Cortés did not sign a written contract with any other

10   defendant, it would not mean that she did not work for them as well because Puerto Rico law

11   enforces oral employment agreements.  *See In re Franco Rivera*, 169 D.P.R. 237 (2006)

12   (affirming use of oral contract to form lawyer-client relationship).  Thus, nothing in Cortés'

13   contract contradicts her claim that, at the time of her allegedly wrongful firing in April 2014,

14   she was "an employee of [all] the defendants," not just one of them.  (ECF No. 15-1 ¶ 22.)

15   As a result, defendants have not established that any of them were fraudulently joined to the

16   action.  *See Universal Truck & Equip.*, 765 F.3d at 108.

17   Defendants have not only failed to adequately allege the citizenship of the limited-

18   liability companies they claim were properly joined to the action, they have also failed to

19   prove that anyone has been fraudulently joined to the action.  In fact, it is clear for a number

20   of reasons that Cortés' May 2013 contract does not contradict her otherwise sufficient

21   pleadings that she was employed by all the defendants when she was fired one year later.

22   The court, nonetheless, recognizes that it may seem unusual for a plaintiff to claim that she

23   was simultaneously employed by a handful of corporate defendants when managing several

1    departments at a marina.  But the record plausibly suggests that, contrary to their assertion,

2    the corporate defendants in this case may not actually operate as "separate and independent

3    legal entities."  (ECF No. 10 at 3.)

4           It is uncontested that PBF-TEP Acquisitions and the "PDR" corporations together

5    "purchased the assets of Cortés['] former employer," Puerto del Rey, Inc., pursuant to a court

6    order in *In re Puerto Del Rey, Inc. a/k/a/ Marina Puerto Del Rey*, No. 12-10295 (Bankr.

7    D.P.R. 2013).  (ECF No. 36 ¶¶ 25-26.)  Those assets consisted of "commercial real estate in

8    Fajardo, Puerto Rico, where the 'Marina Puerto del Rey' is located."  Joint Motion of the

9    Debtor and the Purchaser for Entry of an Order ¶ 2, *In re Puerto Del Rey*, No. 12-10295

10   (Bankr. D.P.R. Apr. 18, 2013), ECF No. 94.  In light of this history, the fact that four of the

11   corporate defendants which jointly acquired Puerto del Rey, Inc., are named PDR

12   Acquisitions, Marina PDR Tallyman, Marina PDR Operations, and Marina PDR Equipment

13   suggests that they were incorporated for the specific purpose of handling the acquisition of

14   the marina.  The record is also clear that these corporations all share a single business

15   address in San Juan, Puerto Rico, Richard Dowling as assistant manager, and co-defendants

16   Nicholas Prouty and Jeremy Griffiths as executives.  (ECF Nos. 15-1 at 1-2, 16-17, 31-32,

17   46-47; 21 ¶ 6.)   Moreover, throughout the litigation before this court, the corporate

18   defendants have been jointly represented by a single set of lawyers without any apparent

19   conflict of interest.  (ECF Nos. 6, 43-44.)  This closely-intertwined relationship goes even

20   deeper.  Fortunately, the court does not have to limit itself to the record in this case to tease

21   out how the various "PDR" corporations appear to serve at the behest of a single alter ego.

22   *See Law Offices of David Efron* v. *Matthews & Fullmer Law Firm*, 782 F.3d 46, 55 n.7 (1st

1    Cir. 2015) ("It is well-accepted that federal courts may take judicial notice of proceedings in

2    other courts if those proceedings have relevance to the matters at hand.").

3          Some of the defendants have appeared before courts in this District on other

4    occasions, and their filings make plausible Cortés' claim that she had worked for all the

5    defendants as manager of Marina Puerto del Rey's Dry Stack, Boat Yard, Land Storage, and

6    Fuel Dock Departments.  For example, in a pending matter in which Marina PDR Tallyman

7    appears, co-defendant Griffiths filed a statement in which he declares that he is Chairman of

8    Marina PDR Tallyman and a resident of Puerto Rico, and that Marina PDR Tallyman

9    "operates and manages one of the largest full-service marinas in the Caribbean which is

10   located in Fajardo, Puerto Rico . . . offer[ing], among others, over 1,100 deep water slips, dry

11   stack boat storage, concierge services, and a fuel dock."  Jeremy Griffiths' Statement ¶¶ 1, 3,

12   *Caraballo-Cecilio* v. *Marina PDR Tallyman LLC*, No. 14-CV-01454 (D.P.R. Nov. 9, 2015),

13   ECF No. 39-1.  Similarly, in two separate cases, Marina PDR Operations has averred that it

14   "is a corporation organized and existing under the laws of the Commonwealth of Puerto

15   Rico, [that] operates a marina, providing wet slip and drystack [or 'land'] storage services for

16   vessels of various sizes."  Amended Verified Complaint ¶ 4, *Marina PDR Operations LLC* v.

17   *M/V Inside Straight*, No. 13-CV-1650 (D.P.R. Aug. 30, 2013) (signed by Rolando

18   Rodríguez, General Manager, Marina PDR Operations), ECF No. 6; Verified Complaint ¶ 4,

19   *Marina PDR Operations LLC* v. *M/V Caja de Muertos Tour*, No. 14-CV-01796 (D.P.R. Oct.

20   31, 2014) (signed by Richard Christiansen, General Manager, Marina PDR Operations), ECF

21   No. 1.[3]  Moreover, in a filing associated with the bankruptcy of Puerto del Rey, Inc., co-

_____

[3] Plaintiffs' complaint alleges that, sometime in late 2013 or early 2014, Richard Christiansen replaced Rolando Rodríguez as "the defendants' new general manager and supervisor."  (ECF No. 15-1

defendant Prouty declared that he is Chief Executive Officer of PDR Acquisition and a resident of Puerto Rico, and that PDR Acquisition "is a Puerto Rico limited liability company . . . [whose] principal place of business is in Fajardo, Puerto Rico," where it has undertaken the "ongoing operation of the Marina."  Verified Complaint ¶¶ 3, 9, and at 23, *In re Puerto Del Rey, Inc.*, No. 12-10295 (Bankr. D.P.R. Feb. 3, 2014), ECF No. 249-1.

 The above filings by individual defendants show that they are jointly engaged in the operation and management of Marina Puerto del Rey, and that Puerto Rico is either their residence or their principal place of business.  Along with the allegations in the complaint, a picture emerges suggesting that the corporate defendants in this case – who appear to jointly operate Marina Puerto del Rey, jointly control labor relations with the marina's employees, jointly share management personnel and executives, and jointly own the marina and its related properties – may act as a single employer.  *See J.R.T.* v. *Asociaciones de Condóminos de los Edificios Playa Azul I*, 117 D.P.R. 20, 35-38 (1986) (explaining the "single employer" and "alter ego" doctrines in Puerto Rico business law).  This intertwined relationship of the defendants provides yet another reason why they are wrong to argue that only Marina PDR Equipment was properly joined to the action.  *See Universal Truck & Equip.*, 765 F.3d at 108.

 In the alternative, defendants claim that this action can also be removed under our arising-under jurisdiction because plaintiffs' local-law causes of action require the "resolution of a substantial question of federal law."  (ECF No. 1 at 4.)  In particular, defendants argue that 11 U.S.C. § 363(f) provides them with a defense against any local-law

---

¶¶ 23-25.)  The statement by co-defendant Griffiths in the main text confirms that Rodríguez was General Manager of Marina PDR Tallyman.  Jeremy Griffiths' Statement ¶ 9, *Caraballo-Cecilio* v. *Marina PDR Tallyman LLC*, No. 14-CV-01454 (D.P.R. Nov. 9, 2015), ECF No. 39-1.

1   claims stemming from Cortés' firing in April 2014 because that statute rendered their May

2   2013 purchase of the marina "free and clear" of any "successor and transfer liability."  (ECF

3   No. 1 at 6.)  That argument is clearly flawed in two respects.

4          First, the court agrees with plaintiffs that defendants' alleged federal defense "is

5   inapplicable to the present case" because Cortés' "discharge . . . is not attributable to her

6   previous employer, but to [d]efendants' own actions after they acquired the ongoing business

7   of Marina Puerto del Rey."  (ECF No. 33 at 6-7.)  In any event, "[t]he existence of a federal

8   defense is not sufficient for removal jurisdiction."  *Rossello-Gonzalez*, 398 F.3d at 10 (citing

9   *Franchise Tax Bd.*, 463 U.S. at 10-11).  "That is generally true even where the asserted

10  defense is the preemptive effect of a federal statute."  *Ten Taxpayer Citizens Group*, 373

11  F.3d at 191 (citing *Franchise Tax Bd.*, 463 U.S. at 12).  The only exception to that rule is the

12  doctrine of complete preemption, which applies only when "Congress [has] intended that

13  federal law provide the exclusive cause of action for the claims asserted by the plaintiff."

14  *López-Muñoz*, 754 F.3d at 5 (citing *Beneficial Nat'l Bank* v. *Anderson*, 539 U.S. 1, 9 (2003)).

15  This exception is related to the artful pleading doctrine, which "allows a federal court to peer

16  beneath the local-law veneer of a plaintiff's complaint in order to glean the true nature of the

17  claims presented."  *Id*. (citing *Rivet* v. *Regions Bank*, 522 U.S. 470, 475 (1998)).  "When

18  such a glimpse reveals that a federal statute entirely displaces the local-law causes of action

19  pleaded in the complaint, a hidden core of federal law sufficient to support federal

20  jurisdiction emerges."  *Id*. (citing *Beneficial Nat'l Bank*, 539 U.S. at 8).

21         It is plain that federal law has not preempted the entire field of employment law in

22  regard to wrongful discharges and discriminatory practices.  *See*, *e.g.*, *Vaello-Carmona* v.

23  *Siemens Med. Solutions USA, Inc.*, 781 F.3d 1, 7 (1st Cir. 2015) (reinstating plaintiffs'

1    wrongful-discharge and employment-discrimination claims under Puerto Rico law, as well as

2    their federal claims under the Americans with Disabilities Act).   It is thus obvious that

3    defendants' alleged defense does not implicate the doctrine of complete preemption, but

4    rather "the doctrine of ordinary (or defensive) preemption," which simply "defends against a

5    plaintiff's local-law claims without any jurisdictional ramifications."   *López-Muñoz*, 754

6    F.3d at 5.  As a result, there is absolutely no basis for removing this action under our federal-

7    question jurisdiction.

8          The removal of this action was frivolous.  As shown above, defendants lacked an

9    objectively reasonable basis for seeking removal under either our diversity jurisdiction or our

10   federal-question jurisdiction.   All that the removal accomplished was eight months of

11   needless litigation and expense.  And yet the court can surmise defendants' reasons for doing

12   it.  By removing this local-law action from the Court of First Instance in Fajardo to Federal

13   District Court in San Juan, defendants caused plaintiffs to scramble for a lawyer who could

14   handle federal-court litigation.  Indeed, plaintiffs had to hire new counsel, and then they had

15   to hire another two lawyers to replace the first one.  (*See* ECF Nos. 13, 23, 25, 27, 30.)  At

16   one point, this court even entered judgment for defendants because of plaintiffs' failure to

17   respond to the dismissal motion in a timely manner.  (*See* ECF Nos. 22.)  In light of the facts

18   and circumstances, the court orders defendants to pay plaintiffs' "just costs and any actual

19   expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c);

20   *see also Franklin Capital Corp.*, 546 U.S. at 141.

21         In sum, due to our lack of subject-matter jurisdiction, the court **REMANDS** the

22   action to the Court of First Instance, Fajardo Superior Court, Civil No. 201500191 (303),

Civil No. 3:15-CV-01460 (JAF)                                                    -14-

1   entitled "Yvette Cortés Pacheco et al. v. PBF-TEP Acquisitions, Inc., et al.," and **ORDERS**

2   defendants to pay plaintiffs' costs and expenses pursuant to 28 U.S.C. § 1447(c).

3       **IT IS SO ORDERED.**

4       San Juan, Puerto Rico, this 22nd day of December , 2015.

5                                                       S/José Antonio Fusté
6                                                       JOSE ANTONIO FUSTE
7                                                       U. S. DISTRICT JUDGE